Russell J. McEwan (Id. #015791995)
Ivan R. Novich (Id. #038311996)
**LITTLER MENDELSON, P.C.**
One Newark Center - 8th Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS, INC., NEW JERSEY CHAPTER; GMP CONTRACTING LLC; ALPINE PAINTING & SANDBLASTING CONTRACTORS; ALPER ENTERPRISES, INC., and RON VASILIK, <br><br> Plaintiffs, <br><br> -vs- <br><br> CITY OF JERSEY CITY, NEW JERSEY <br><br> Defendant. | Case No. [to be assigned] <br><br> **PLAINTIFFS' COMPLAINT AND JURY DEMAND** <br><br> *Electronically filed* |

In support of its Complaint, Plaintiffs Associated Builders and Contractors, Inc., New Jersey Chapter ("Plaintiff" or "ABC-NJ"), GMP Contracting LLC ("GMP"), Alpine Painting & Sandblasting Contractors ("Alpine"), Alper Enterprises, Inc. ("Alper"), and Ron Vasilik ("Vasilik") aver the following allegations against Defendant City of Jersey City, New Jersey ("Defendant" or "Jersey City"):

### PARTIES

1.     ABC-NJ is a non-profit organization organized under the laws of the state of New Jersey and having its principal place of business at 414 River View Plaza, Trenton, NJ 08611.

2.      ABC-NJ serves the interests of merit shop contractors throughout the State of New Jersey by advocating for open competition in the award of construction contracts based on merit, and regardless of the bidding contractor's labor affiliation.

3.      ABC-NJ counts among its membership more than one hundred construction contracting firms that collectively employ more than one thousand New Jersey residents, including residents of Hudson County and including the corporate plaintiffs.

4.      GMP is a business organized under the laws of the State of New Jersey and a member of ABC-NJ.  GMP has its principal place of business located at 295 Durham Ave, Suite 109, South Plainfield, N.J.

5.      Alpine is a business organized under the laws of the State of New Jersey and a member of ABC-NJ.  Alpine has its principal place of business located at 17 Florida Avenue, Paterson, N.J.

6.      Alper is a business organized under the laws of the State of New Jersey and a member of ABC-NJ.  Alper has its principal place of business located at 530 Kings Highway, Moorestown, N.J.

7.      Ron Vasilik is an employee of Plaintiff Alpine who resides in Morris County in the State of New Jersey.

8.      Jersey City is a municipal corporation organized under the laws of the state of New Jersey, with its principal place of business located at 280 Grove Street, Jersey City, New Jersey 08611.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9.      In 2007, the Municipal Council of the City of Jersey City enacted Chapter 304 (Taxation), Article VII (Construction Project Labor Agreements) of the Jersey City Code (the "Ordinance"), a current copy of which is attached as Exhibit A, reflecting amendments of May

-2-

28, 2014. Section 304-34 of the Ordinance states that ["a]ll Tax Abated Projects ... shall require the execution of a project labor agreement that complies with the requirements of this chapter," subject to limited exceptions. Section 304-33.9 defines a Tax Abated Project" as "a project that has a Total Construction Cost that is equal to or exceeds twenty-five million dollars…exclusive of any land acquisition costs, which receives either (1) a long term tax exemption pursuant to the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 *et seq*., or (2) a five (5) year tax exemption that requires Municipal Council approval, pursuant to the Five Year Exemption and Abatement Law, N.J.S.A. 40A:21-1, *et seq*., and Section 301-6 *et seq*., of the Municipal Code." According to the Ordinance, a Tax Abated Project is not a "Public Construction Project," which is separately defined as "a construction contract entered into by the City using public funds…." Section 304-33.7

10.  Section 304-33.7 defines "Project Labor Agreement" (hereafter "PLA") as "a contract between a labor organization and a developer that contains at a minimum the requirements set forth in this Chapter." Section 304-35 states that the required PLA "shall contain" *inter alia* the following terms:

> a.  A provision to bind all contractors and subcontractors on the project in all relevant documents [including the "Schedule A" collective bargaining agreements of the local building trades unions].
>
> b.  Evidence that each contractor and subcontractor working on the project has a local federally registered apprenticeship program.
>
> c.  A requirement that twenty percent (20%) of the labor hours required shall be performed by apprentices and that all apprentices shall be Jersey City residents. [Unless] it can be demonstrated that fulfilling this requirement is not possible because there are not enough apprentices available,….

11.  Section 304-37 of the Ordinance further states that if a private developer fails to comply with the foregoing PLA requirements on any Tax Abated Project, then the City shall be permitted to seek penalties (referred to in the Ordinance as "remedies"), including suspension of

the tax abatement and assessment of 300% of conventional real estate taxes on the project and to assess "liquidated damages" up to and including termination of the tax abatement.

12.    By virtue of a May 2014 amendment, Section 304-37 also imposes financial penalties on developers whose projects did not initially require imposition of a PLA because Total Construction Costs were projected to be less than the twenty-five million dollar threshold, but where it is later shown that Total Construction Costs in fact exceeded the twenty-five million dollar threshold.

13.    Upon information and belief, the Hudson County Building and Construction Trades Council (the "Trades Council") was consulted and actively involved in drafting the Ordinance, and supported its enactment and subsequent amendment.

14.    Upon information and belief, the Ordinance has been applied since its initial passage to no fewer than fifteen private construction projects in Jersey City, with estimated construction costs easily exceeding $500 million and requiring tens of thousands of man hours during the construction process.  Private construction projects on which a PLA has been required by the Ordinance include, upon information and belief:  Aquablu (Aqua Urban Renewal Co); 225 Grand Street (Grand LHN II Urban Renewal); 18 Park Avenue (Grand LHN II); Monaco North Tower (Monaco North Urban Renewal); Monaco South Tower (Monaco South Urban Renewal; Marbella Tower South (Marbella South Urban Renewal); Provost Square Tower I, 10 Provost Square   (Provost Square Urban Renewal); Trump Tower East-65 Bay Street (Morgan Street Developers Urban Renewal Company, LLC); Columbus Tower II (Columbus Towers Urban Renewal); Journal Squared Tower I (Journal Square Urban Renewal Associates); 160 First Street (160 First Street Urban Renewal); 3 Journal Square (3 Journal Square Urban Renewal), and the Goya Foods Distribution Center (Goya Urban Renewal, LLC).

15.     Upon information and belief, Jersey City maintains or maintained on file a "model PLA" approved and furnished by the Trades Council and from which the Trades Council has refused to deviate on some Tax Abated Projects.

16.     The PLA requirement contained in the Ordinance poses significant obstacles to the Plaintiffs' and to Plaintiff ABC-NJ's members' ability to bid for work subject to the Ordinance on an equal basis with unionized contractors in that the Plaintiffs:

      a.    do not have established collective bargaining relationships;

      b.    do not have past experience working under PLAs;

      c.    cannot estimate their labor costs without knowing the outcome of PLA negotiations, including applicable economic and non-economic terms, which are obviously critical elements of any contractor's bid;

      d.    would be required to hire employees through a union hiring hall, and in accordance with hiring hall rules and not their own standards; and

      e.    would be restricted in the hiring of subcontractors, inasmuch as subcontractors would also be required to adhere to the PLA.

17.     While performing excavation work on the 225 Grand Street project, Plaintiff GMP was pressured by labor organizations to execute a project labor agreement, but declined to do so. Thereafter, GMP was invited to bid on other projects subject to the Ordinance, but was deterred from doing so because of the PLA requirement.  GMP and its employees have thus been harmed as a result of the unlawful Ordinance by being prevented from competing for and/or performing work for which they are ready, willing and able.

18.     Plaintiff Alpine regularly performs commercial painting work in Hudson County, N.J. and in the City of Jersey City, and its work includes commercial painting in mid-rise and hi-rise buildings of the type constructed subject to the terms of the Ordinance.  Alpine has been deterred from bidding on work subject to the Ordinance because of the PLA requirement.  Alpine

and its employees have thus been harmed as a result of the unlawful Ordinance by being prevented from competing for and/or performing work for which they are ready, willing and able.

19.     Plaintiff Alper regularly performs commercial roofing work in Hudson County, N.J. and in the City of Jersey City, including work of the type subjected to the Ordinance.  In May 2014, Alper was invited to bid on work at the 3 Journal Square project, which upon information and belief was to become subject to the Ordinance and its PLA requirement pending approval of a tax abatement application.  Alper was deterred from submitting a bid because of the PLA requirement.  Alper and its employees have thus been harmed as a result of the unlawful Ordinance by being prevented from competing for and/or performing work for which they are ready, willing and able.

20.     Other members of Plaintiff ABC-NJ have been precluded from performing work on projects subject to the Ordinance based on their failure to execute a PLA, and have thereby been harmed as a result of the unlawful Ordinance by being prevented from performing work for which they are ready, willing and able.

21.     Plaintiff ABC-NJ has standing to pursue this action on behalf of its members under the three-part test of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), because (1) Plaintiffs' members would otherwise have standing to sue in their own right; (2) the interests at stake in this case are germane to Plaintiffs' organizational purposes; and (3) neither the claims asserted nor the relief requested requires the participation of Plaintiffs' individual members.

22.     Plaintiffs and Plaintiff ABC-NJ's members are ready, willing, and able to perform work on private construction projects of the type to which the Ordinance has been applied, but have been discriminated against and deterred from doing so because, *inter alia*, the Ordinance would require them to:   (i) recognize a labor organization as the collective bargaining

representative of their respective employees without their employees' consent; (ii) assent to a project labor agreement requiring them to be bound by any collective bargaining agreement, and (iii) agree to a collective bargaining agreement containing terms dictated by the Ordinance.

23.     The Ordinance has and will continue to discriminate against and deter Plaintiffs and Plaintiff ABC-NJ's members from bidding and competing for work on or otherwise participating in major, private construction projects for which tax abatement applications have or will be filed, and in which Jersey City has no property interest or proprietary interest and is not acting as a market participant.

24.     Separate from and in addition to the foregoing discriminatory PLA requirements of the Ordinance, the requirement that all apprentices on covered Tax Abated Projects be residents of Jersey City adversely impacts the employment of Plaintiffs' employees, and the employees of Plaintiff ABC-NJ's members, including the individual employee Plaintiff in this complaint, who is not a resident of Jersey City.  Upon information and belief, there is no factual basis for enactment of the Ordinance's residential hiring requirements.  Specifically there is no evidence that out-of-state or out-of-city residents employed on Tax Abated Projects in Jersey City are the "peculiar source of evil" that adversely affects the employment of otherwise qualified Jersey City residents on privately funded construction projects.

25.     Separate from and in addition to the foregoing discriminatory PLA requirements of the Ordinance, the requirement that all contractors participate in and provide a "local federally registered apprenticeship program" for the benefit of their employees and/or contribute funds towards an ERISA-covered apprenticeship program maintained under the terms of the PLA discriminates against and adversely affects the bidding opportunities of Plaintiffs and Plaintiff ABC-NJ's members, and the employment of Plaintiff's employees and employees of Plaintiff ABC-NJ's members on covered Tax Abated Projects. This requirement further compels Plaintiffs

to provide an employee benefit covered by ERISA to their employees in a manner inconsistent with and preempted by that federal law.

26.     Plaintiffs bring this suit against Jersey City for violating their rights under controlling federal and state laws, as further specified below.

## JURISDICTION AND VENUE

27.     This action seeks relief and judgment that Defendant, a municipal corporation, may not interfere with Plaintiffs' rights under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1144, the Fourteenth Amendment to the U.S. Constitution, and the Supremacy, Privileges and Immunities, and Commerce Clauses of the Constitution.  Jurisdiction is based on 29 U.S.C. § 1331 and 42 U.S.C. § 1983.  The federal court has supplemental jurisdiction over Plaintiffs' closely related state court claims under 28 U.S.C. § 1367.

28.     The events giving rise to this claim occurred in Hudson County, New Jersey. Venue is therefore properly placed in the above-captioned Court in accordance with 28 U.S.C. § 1391.

## FIRST CAUSE OF ACTION
### (NLRA Preemption Under The Supremacy Clause)

29.     Plaintiffs repeat and re-allege each and every preceding paragraph as if set forth at length.

30.     Local regulations like the Ordinance are preempted where their subject matter is arguably subject to § 7 or § 8 of the NLRA, or where it concerns those aspects of labor-management relations that Congress intended to be controlled by the free play of economic forces.

31.     The Ordinance infringes on Plaintiffs' rights protected under §8 of the NLRA and concerns aspects of labor-management relations that Congress intended to be controlled by the

free play of economic forces by requiring Plaintiffs to recognize labor organizations as the collective bargaining representative of their employees without such organization having been designated by a majority of the Plaintiffs' employees; by requiring Plaintiffs to assent to a PLA that binds them to area-wide collective bargaining agreements; and by requiring Plaintiffs to assent to a PLA containing mandatory terms that are normally the product of collective bargaining.

32. The Ordinance is therefore preempted under the U.S. Supreme Court's controlling decisions of *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) (preempting state or local attempts to regulate activity arguably subject to Sections 7 or 8 of the Act) and/or *International Association of Machinists & aerospace Workers v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976) (preempting state or local attempts to regulate aspects of labor-management relations that Congress intended to be controlled by the free play of economic forces").

33. The Ordinance is not saved from preemption by the Supreme Court's holding in *Building and Constr. Trades Council v. Associated Builders and Contractors of Mass/R.I., Inc.*, 507 U.S. 218 (1993) ("*Boston Harbor*"), because the Ordinance's award of tax abatements to private developers, conditioned on the imposition of the PLA requirement on the developers' private projects, is not an act of market participation. Such an ordinance constitutes regulation, as this District Court held in a previous case involving Jersey City. *See Hudson County Bldg. & Constr. Trades Council v. City of Jersey City*, 960 F. Supp. 823, 833 (D.N.J. 1996).

### SECOND CAUSE OF ACTION
**(Residential Hiring Preference Violating the Privileges and Immunities and/or Commerce Clauses)**

34. The previous paragraphs are restated and incorporated by reference.

35. Article IV, Section 2 to the United States Constitution states, in part, "[t]he Citizens of each state shall be entitled to all Privileges and Immunities of Citizens in the Several States." The Ordinance's requirement that all apprentices on covered Tax Abated Projects owned by private developers must be residents of Jersey City violates the Privileges and Immunities Clause because it unlawfully discriminates against out-of-state individuals and those who employ out-of-state individuals who have the requisite skill, knowledge, experience, and education to efficiently work and complete privately owned construction projects in Jersey City. *See United Bldg. & Constr. Trades Council of Camden County v. Mayor & Council of City of Camden*, 465 U.S. 208 (1984). The Supreme Court in that case expressly exempted the City's defense of market participation, finding such a defense irrelevant to a Privileges and Immunities Claim.

36. For similar reasons, the Ordinance's residential hiring restriction violates the dormant Commerce Clause of the Constitution which prevents state and local governments from interfering with Congress's power to regulate interstate commerce. In this regard, market participation, while relevant, is not present here, for the reasons cited above with regard to Plaintiffs' claim under the NLRA. The Supreme Court has expressly held that favorable tax treatment to private parties does not constitute market participation within the meaning of the Commerce Clause. *See Camps Newfound/Owatonna v. Town of Harrison*, 520 U.S. 564, 592-93 (1997); *see also Hudson County Bldg. & Constr. Trades Council v. City of Jersey City*, 960 F. Supp. 823, 833 (D.N.J. 1996).

### THIRD CAUSE OF ACTION
### (Apprenticeship Mandate Preempted By ERISA)

37. Plaintiffs repeat and re-allege each and every preceding paragraph as if set forth at length.

38. As alleged above, the Ordinance requires contractors to maintain and participate in unionized apprentice training programs as a condition of performing work on private Tax Abated

Projects.  In order to comply with this provision, Plaintiffs must incur substantial obligations to contribute to a separate fund maintained by jointly held apprenticeship trusts sponsored by the unions and subscribing unionized contractors.  Such a requirement applicable to private construction projects is inconsistent with and preempted by ERISA.

39.    Apprenticeship and training programs are employee welfare benefit plans expressly covered by ERISA. 29 U.S.C. 1002(1).  Pursuant to 29 U.S.C. 1144(a), ERISA states it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."  The Ordinance's apprenticeship mandate plainly "relates" to an employee welfare benefit plan within the meaning of 29 U.S.C. 1002(1).  Accordingly, the Apprenticeship Requirement is preempted by ERISA pursuant to 29 U.S.C. 1444(a). *See Merit Construction Alliance v. City of Quincy*, __ F. 3d __ (1st Cir. July 16, 2014) (finding City of Quincy's similar apprenticeship mandate to be preempted by ERISA)

## FOURTH CAUSE OF ACTION
### (New Jersey Civil Rights Act and Constitution)

40.    Plaintiffs repeat and re-allege each and every preceding paragraph as if set forth at length.

41.    The New Jersey Civil Rights Act protects Defendant's substantive due process and equal protection rights, privileges and immunities secured by the Constitution and laws of the United States and State of New Jersey.

42.    Defendant has deprived Plaintiffs of their substantive due process rights, equal protection rights, and substantive rights privileges and immunities protected by the United States and New Jersey Constitutions and federal and state laws.

## FIFTH CAUSE OF ACTION
### (42 U.S.C. 1983)

43.    Plaintiffs repeat and re-allege each and every paragraph as if set forth at length.

44.     42 U.S.C. § 1983 ("Section 1983") states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

45.     Each of the rights, privileges and immunities secured by the Constitution and laws of the United States as set forth in the previous causes of action is enforceable through Section 1983. These include the rights conferred by the Supremacy Clause and the NLRA, the Fourteenth Amendment to the U.S. Constitution, the Privileges and Immunities and Commerce Clauses of the Constitution, and the Constitution of the State of New Jersey.

46.     Among other things, Jersey City's Ordinance is an act under color of law that deprives Plaintiffs of their federally protected rights:  (i) to not be forced or required to enter into an agreement with a labor organization, (ii) to recognize and bargain with a labor organization as the representatives of its employees, or to refrain from doing so, and (iii) to be free from threats, coercion or restraint in the exercise of rights conferred by the NLRA.

47.     Jersey City's actions are in violation of the rights of ABC-NJ's members and contractors under the laws and Constitution of the United States and the laws and Constitution of the State of New Jersey.  Jersey City, acting under color of law, has violated Section 1983, by depriving Plaintiffs of their rights and privileges secured by the federal and state law, resulting in harm to them.

48.     Jersey City has unlawfully interfered with the Plaintiffs' rights and the rights of Plaintiff ABC-NJ's members by enacting the Ordinance and by restraining them in their exercise of their lawful rights.

WHEREFORE, Plaintiffs demand judgment as follows:

A.      Defendant be enjoined and restrained from requiring the execution and enforcement of a PLA on any Tax Abated project;

B.      Declaration that Defendant's requirement of a PLA on Tax Abated projects, including residential hiring requirements and apprenticeship mandates, is preempted by federal law;

C.      Declaration that Defendant's actions in mandating a PLA on Tax Abated projects, including residential hiring requirements and apprenticeship mandates, violate federal and state law;

D.      Plaintiffs shall be awarded compensatory and punitive damages; and

E.      Plaintiffs shall be awarded their reasonable attorneys' fees and costs in accordance with 42 U.S.C. § 1983; 42 U.S.C. § 1988; and N.J.S.A 10:6-2(f).

### JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:  August 29, 2014
        Newark, New Jersey

/s/

Ivan R. Novich    (Id. #038311996)
LITTLER MENDELSON, P.C.
One Newark Center - 8th Floor
Newark, New Jersey 07102
973.848.4738
Attorneys for Plaintiff

# EXHIBIT A

City Clerk File No. _____ Ord. 14.052

Agenda No. _____ 3.B _____ 1st Reading

Agenda No. _____ 4.8 _____ 2nd Reading & Final Passage

# ORDINANCE
# OF
# JERSEY CITY, N.J.

**COUNCIL AS A WHOLE**
offered and moved adoption of the following ordinance:

### CITY ORDINANCE 14.052

TITLE: ORDINANCE AMENDING AND SUPPLEMENTING CHAPTER 304 (TAXATION) ARTICLE VII (CONSTRUCTION PROJECT LABOR AGREEMENTS) OF THE JERSEY CITY MUNICIPAL CODE

**THE MUNICIPAL COUNCIL OF THE CITY OF JERSEY DOES ORDAIN:**

A. The following amendment to Chapter 304 (Taxation) Article VII (Construction Project Labor Agreements) of the Jersey City Code are hereby adopted:

### ARTICLE VII
### Construction Project Labor Agreements

§304-33. Definitions.

1. APPRENTICE means a worker who participates in a federal or state apprenticeship program or, as an apprentice equivalent, participates in a DOL approved training program, takes a construction apprenticeship test, and receives benefits and pay not less than those received by an apprentice.

2. APPRENTICESHIP PROGRAM means an apprenticeship program operated by a labor organization and registered by the Bureau of Apprenticeship and Training of the US Department of Labor or an apprenticeship equivalent program as that term is used by the State of New Jersey in the Abbot Project Labor Agreement either approved and funded by the New Jersey Department of Labor as of January 1, 2003.

3. CITY OF JERSEY CITY means the City or the Business Administrator or his designee.

4. DEVELOPER means the recipient of a tax exemption for a tax abated project or the awardee of a public construction contract for a public construction project.

5. LABOR ORGANIZATION means an organization which represents, for purposes of collective bargaining, employees involved in the performance of public construction project or tax abated project that has the present ability to refer, provide or represent sufficient numbers of qualified employees to perform the contracted work and has an apprenticeship program.

6. PROJECT COMPLETION means the determination by the City that the project, in whole or in part, is ready for the use intended, which ordinarily shall mean the date on which the project receives its final certificate of occupancy.

7. PROJECT LABOR AGREEMENT means a contract between a labor organization and a developer that contains at a minimum the requirements set forth in this Chapter.

8. PUBLIC CONSTRUCTION PROJECT means any construction contract entered into by the City using public funds, the total cost of which is equal to or exceeds five million dollars ($5,000,000.00), exclusive of any land acquisition costs.

9. TAX ABATED PROJECT means a project that has a [t] Total [c] Construction [c] Cost that is equal to or exceeds twenty-five million dollars ($25,000,000.00), exclusive of any land acquisition costs, [for which the City has granted] which receives either 1) a long term tax [abatement] exemption pursuant to the Long Term Tax Exemption Law N.J.S.A. 40A:20-1 et seq. or 2) a five (5) year tax exemption that requires Municipal Council approval, pursuant to

Continuation of City Ordinance _____ 14.052 _____ , page   2

the Five Year Exemption and Abatement Law, N.J.S.A. 40A:21-1 et seq., and Section 301-6 et seq. of the Municipal Code. [However, any project that is being undertaken by a not for profit organization or which shall contain more than fifty percent (50%) affordable housing shall be excluded.]

10.   TOTAL CONSTRUCTION COST means all costs, excluding only land acquisition costs, incurred to construct a project through the date of completion, that is, the date the first Certificate of Occupancy is issued. Total Construction Costs shall generally be determined in accordance with the industry standard of Marshall and Swift Valuation, but including the cost of piling and soil compaction.  Total Construction Cost must include any Construction Cost constituting as an element of Total Project Cost under N.J.S.A. 40A:20-3(h)(4), whether the project is approved under the Long Term Tax Exemption or the Five Year Tax Exemption Law.

§304-34.   Project labor agreements required [for certain projects]; Reports; Exemption.

1.   Project Labor Agreement required:  All [t] Tax [a] Abated [p] Projects and all requests for proposals, specifications and final contracts for [p] Public [c] Construction [p] Projects shall require the execution of a project labor agreement that complies with the requirements of this chapter, unless the Business Administrator determines, taking into consideration the nature, size and complexity of the project, such as the height of the buildings, the presence of elevators and the utilization of steel, that a project labor agreement is not appropriate. In all cases, the project labor agreement must advance the interests of the City of Jersey City, including cost, efficiency, quality, time lines, and need for a skilled labor force and safety.

2.   Reports:

   A.   All developers or Tax Abated Projects, whether subject to Project Labor Agreement or not, shall submit a detailed certification of the estimated Total Construction Cost with its application for any tax abatement, which shall be made available to the public.

   B.   In the event construction permits are issued more than 12 months have expired from the date of the adoption of the ordinance approving the Tax Abatement, the developer shall be required to re-submit a current estimate of Total Construction Costs to insure that the Total Construction Costs do not exceed $25,000,000 or it will be deemed a Project Labor Agreement applies.

   C.   No later than 90 days following project completion, the developer shall submit a certification of actual Total Construction Cost. Whether estimated or actual, all Total Construction Cost shall be certified to the City by the project Architect and Engineer. Total Construction Cost is subject to review by the City at the time of application and audit by the City, upon project completion.

3.   Exemption: Any project that is being undertaken by a not for profit organization or which shall contain more than fifty percent (50%) affordable housing shall be exempt from the requirement of a Project Labor Agreement (PLA).

§304-35.   General requirements.

The project labor agreement [, one form of which is on file in the office of the City Clerk,] shall contain the following terms:

1.   A guarantee that there will be no strikes, lock-outs, or other similar actions.

2.   Procedures to insure the effective, immediate, and mutually binding resolutions of jurisdictional and labor disputes arising before the completion of the work.

3.   A provision to bind all contractors and subcontractors on the project in all relevant documents.

4.   Evidence that each contractor and subcontractor working on the project has a local federally registered apprenticeship program.

5.   A requirement that twenty percent (20%) of the labor hours required shall be performed by apprentices and that all apprentices shall be Jersey City residents. However, if it can be demonstrated that fulfilling this requirement is not possible because there are not enough apprentices available, the required percentage of apprentices will be decreased accordingly.

6.   Conformity with all statutes, regulations and City ordinances regarding the implementation of our goals for women and minority owned businesses.

Continuation of City Ordinance _____ **14.052** _____, page __ **3** __

7.   A requirement that Developers and Labor Organizations complete the following "Pre-Construction Actions":

A.   Pre-Construction Meeting: Not less than 90 days prior to the commencement of construction, the developer will meet with the Business Administrator and the labor organization to present workforce needs, which will include the job description of the positions to be filled and the duration of the project. In addition, the developer will provide the construction schedule. The labor organization will present the developer and the City with the names, addresses and trades of eligible apprentices who are available to work on the project.

B.   Advertisement: Not less than sixty (60) days prior to the commencement of construction, the Labor Organization will advertise in two newspapers regularly published and distributed in Jersey City and outreach via other media, such as cable television, the web, and/or radio. The advertisement will solicit apprenticeship applications for the labor organization's apprenticeship program, describe the basic requirements for admission, describe the job training and set forth the range of salaries.

C.   Job Fairs: Developer and the labor organization will jointly participate in at least two (2) job fairs to be held at a location to be provided by the City in order to explain the apprenticeship programs and solicit applications from attendees. Each participating developer shall pay a pro rata share of the costs of each job fair. <u>The first job fair shall be held at least 50 days prior to commencement of construction.</u>

**§304-36.   Reports and records.**

The project labor agreement shall require the submission of the following reports to the business administrator on the fifteenth day of each month for the previous month, for each year of construction until project completion:

1.   Manning Report. The developer's report will accurately reflect the total hours in each construction trade or craft and the number of hours worked by City residents, including a list of minority resident and women resident workers in each trade or craft, and will list separately the work hours performed by such employees of the contractor and each of its subcontractors during the previous quarter.

2.   Certified Payroll Report. The developer's report that will specify the residence, gender and ethnic/racial origin of each worker, work hours, and the rate of pay and benefits provided.

3.   Equal Employment Opportunity Reports. The labor organization's local union report (EEO-3) and apprenticeship information report (EEO-2) which are required to be filed with the US Commission of Equal Employment Opportunity Commission by the labor organization.

4.   Apprenticeship Report. The report of the labor organization that shall list of the names, address and contact information of all persons who were accepted to the apprenticeship program. The report shall also list the names, address and contact information of all persons who were rejected for admission to the apprenticeship program with the reasons for their rejection and, for those who failed to finish the program, the reasons why they failed to complete the program.

5.   Other-Reports. The developer or labor organization shall furnish such reports or other documents to the City as the City may reasonably request from time to time in order to carry out purposes of the ordinance.

6.   Records. Records to support the work hours stated in the above reports must be maintained for a period of three (3) years after project completion. All records shall be made available to the City upon ten (10) days prior written notice.

7.   Site access. Representatives of the City shall be permitted to have appropriate access to all work sites in order to monitor compliance.

**§304-37.   Remedies.**

In the event of default the developer shall be provided with a written notice of default allowing the developer ten (10) days to cure the default. Should the developer fail to cure, then, in addition to any other remedies available at law or in equity including termination, the City shall be permitted to seek the following remedies for the failure to comply with this ordinance, (, which remedies shall also be included in the project labor agreement)

Continuation of City Ordinance _____ · ___ **14.052** _____ , page _____ **4** _____

A reference to the within ordinance, including the within remedies, shall be included in the financial agreement for any Tax Abated Project, irrespective of estimated Total Construction Costs:

1.   For Public Construction Projects:

   A.   Suspend the public construction contract for failure to complete any of the preconstruction actions described in Subsection 304-35.8.A, B and C;

   B.   Complete the contract with a substitute contractor or subcontractor and require the contractor or subcontractor to pay all damages and costs incurred;

   C.   · Require the refunding of payments made by the City to the developer prior to the suspension or termination; and/or

   D.   Liquidated damages in the following amounts: three percent (3%) of the total price of the construction contract for each breach and up to ten percent (10%) of the total price of the construction contract for multiple breaches or for a single breach that is unabated for a period of six (6) months.

2.   For Tax Abated Projects:

   A.   Suspension: Suspend the tax abatement financial agreement until the date of cure (during which period three hundred percent (300%) of conventional real estate taxes shall be assessed and collected) for during any period that the developer fails to complete any of the preconstruction actions described in Subsections 304-35.8.A and C hereof.

   B.   Liquidated Damages:

      (1)   Late filing of any report required under Section 304-36 hereof: a payment of one thousand dollars ($1,000.00) per day for each day that the report is late for up to fourteen (14) days. After fourteen (14) days, the remedy in section (2) hereof, shall apply.

      (2)   Failure to provide a required report or record or to allow work place access: an amount equal to two percent (2%) of the estimated annual payment in lieu of taxes for each month or part thereof the records or work place access is not provided.

      (3)   A material breach of any other term of this Chapter, an amount equal to two percent (2%) of the estimated annual payment in lieu of taxes for each month or part thereof the breach continues.

      (4)   A material breach of this Chapter that continues for a period of six (6) months or more, shall allow the City to terminate the tax abatement.

3.   For Tax Abated Projects if a Project Labor Agreement was initially determined not to be required:

   A.   In the event an application for a Tax Abated Project contains an estimate of Total Project Cost that is less than $25 million dollars, but upon project completion is determined to have a Total Construction Cost equal to or exceeding $25 million, then the project Service Charge shall be increased as follows:

      (1)   Long Term Tax Exemption: 2% of Total Project Cost, or 5% of Annual Gross Revenue, as applicable; or

      (2)   Five Year Tax Exemptions: the phase-in for each year shall be increased 10%.

      (3)   The above increases shall be retroactive to the date of Substantial Completion and shall apply for each and every year of the entire term of the tax abatement.

   B.   In addition, the project shall also be immediately subject to the City's Living Wage, Section 3-76 of the Jersey City Municipal Code.

Continuation of City Ordinance _____ 14.052 _____, page ___ 5 ___

§304-38.    Pre-apprenticeship training program.

1.    Inter Agency Cooperation. The City will solicit the support of the Jersey City Board of Education, the Hudson County Community College, the Hudson County Vo-Tech School, the Jersey City Employment and Training Program, Inc, the Jersey City Housing Authority, and other community based organizations to maximize participation in the apprenticeship program among eligible City residents.

2.    Preparatory Services. The City shall be responsible for the development of a program to provide all necessary preparatory services for enrolled pre-apprentices, including assistance with GED preparation, obtaining drivers license, mentoring and other supportive services for pre-apprentices. The pre-apprenticeship program shall be operated in such a manner that its successful graduates will be equipped and eligible for entry into the apprenticeship programs of a labor organization.

3.    Monitoring. The City shall be responsible for the selection, operation and supervision of pre-apprenticeship programs that may be operated by private entities, such as the Jersey City Employment and Training Program, Inc., and shall retain authority to review and approve the curriculum and procedures used to recruit and select participants.

B.    All Ordinances and parts of Ordinances inconsistent herewith are hereby repealed.

C.    This Ordinance shall be a part of the Jersey City Code as though codified and fully set forth therein. the City Clerk shall have this Ordinance codified and incorporated in the official copies of the Jersey City Code.

D.    This ordinance shall take effect at the time and in the manner as provided by law.

E.    The City Clerk and Corporation Counsel be and they are hereby authorized and directed to change any chapter numbers, article numbers and section numbers in the event that the codification of this Ordinance reveals that there is a conflict between those numbers and the existing code, in order to avoid confusion and possible accidental repealers of existing provisions.

NOTE:    ·  All new material is underlined; words in [brackets] are omitted.
For purposes of advertising only, new matter is indicated by boldface
and repealed matter by italic.

JM/he
5/13/14

APPROVED AS TO LEGAL FORM

_____
            Corporation Counsel

Certification Required    ☐
Not Required    ☐

APPROVED:_____

APPROVED:_____
                        Business Administrator

**RESOLUTION FACT SHEET – NON-CONTRACTUAL**
This summary sheet is to be attached to the front of any resolution that is submitted for Council consideration.
Incomplete or vague fact sheets will be returned with the resolution.

**Full Title of Ordinance/Resolution**

ORDINANCE AMENDING AND SUPPLEMENTING CHAPTER 304 (TAXATION) ARTICLE VII
(CONSTRUCTION PROJECT LABOR AGREEMENTS) OF THE JERSEY CITY MUNICIPAL CODE

**Initiator**

| Department/Division | Law | Law |
|---|---|---|
| Name/Title | Jeremy Farrell | Corporation Counsel |
| Phone/email | (201) 547 – 4667 | JFarrell@jcnj.org |

Note: Initiator must be available by phone during agenda meeting (Wednesday prior to council meeting @ 4:00 p.m.)

**Resolution Purpose**

Ordinance makes revisions to the definitions, requirements and remedies imposed by it.

I certify that all the facts presented herein are accurate.

_____          _____
Signature of Department Director                Date

# Ordinance of the City of Jersey City, N.J.

ORDINANCE NO. Ord. 14.052
TITLE:          3.B MAY 14 2014  4.B   MAY 2 8 2014

Ordinance amending and supplementing Chapter 304 (Taxation) Article VII (Construction Project Labor Agreements) of the Jersey City Municipal Code.

| RECORD OF COUNCIL VOTE ON INTRODUCTION  MAY 14 2014  9-0 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNCILPERSON | AYE | NAY | N.V. | COUNCILPERSON | AYE | NAY | N.V. | COUNCILPERSON | AYE | NAY | N.V. |
| GAJEWSKI | ✓ | | | YUN | ✓ | | | RIVERA | ✓ | | |
| RAMCHAL | ✓ | | | OSBORNE | ✓ | | | WATTERMAN | ✓ | | |
| BOGGIANO | ✓ | | | COLEMAN | ✓ | | | LAVARRO, PRES. | ✓ | | |

RECORD OF COUNCIL VOTE TO CLOSE PUBLIC HEARING   MAY 2 8 2014

Councilperson BOGGIANO moved, seconded by Councilperson RIVERA to close P.H.   8-0

| COUNCILPERSON | AYE | NAY | N.V. | COUNCILPERSON | AYE | NAY | N.V. | COUNCILPERSON | AYE | NAY | N.V. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GAJEWSKI | ✓ | | | YUN | ABSENT | | | RIVERA | ✓ | | |
| RAMCHAL | ✓ | | | OSBORNE | ✓ | | | WATTERMAN | ✓ | | |
| BOGGIANO | ✓ | | | COLEMAN | ✓ | | | LAVARRO, PRES. | ✓ | | |

✓ Indicates Vote                                         N.V.--Not Voting (Abstain)

SPEAKERS:

YVONNE BALCER
LAVERN WASHINGTON
GLEN TIGER
NORRIS GADSDEN
CYNITA DAVIS
PAT KELLEHER

| RECORD OF COUNCIL VOTE ON AMENDMENTS, IF ANY | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Councilperson ___ moved to amend* Ordinance, seconded by Councilperson ___ & adopted ___ | | | | | | | | | | | |
| COUNCILPERSON | AYE | NAY | N.V. | COUNCILPERSON | AYE | NAY | N.V. | COUNCILPERSON | AYE | NAY | N.V. |
| GAJEWSKI | | | | YUN | | | | RIVERA | | | |
| RAMCHAL | | | | OSBORNE | | | | WATTERMAN | | | |
| BOGGIANO | | | | COLEMAN | | | | LAVARRO, PRES. | | | |

RECORD OF FINAL COUNCIL VOTE   MAY 2 8 2014   8-0

| COUNCILPERSON | AYE | NAY | N.V. | COUNCILPERSON | AYE | NAY | N.V. | COUNCILPERSON | AYE | NAY | N.V. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GAJEWSKI | ✓ | | | YUN | ABSENT | | | RIVERA | ✓ | | |
| RAMCHAL | ✓ | | | OSBORNE | ✓ | | | WATTERMAN | ✓ | | |
| BOGGIANO | ✓ | | | COLEMAN | ✓ | | | LAVARRO, PRES. | ✓ | | |

✓ Indicates Vote                                         N.V.--Not Voting (Abstain)

Adopted on first reading of the Council of Jersey City, N.J. on ___ MAY 14 2014

Adopted on second and final reading after hearing on ___ MAY 2 8 2014

This is to certify that the foregoing Ordinance was adopted by the Municipal Council at its meeting on  MAY 2 8 2014

Robert Byrne, City Clerk

*Amendment(s):

APPROVED:
Rolando R. Lavarro, Jr., Council President
Date  MAY 2 8 2014

APPROVED:
Steven M. Fulop, Mayor
Date  MAY 2 9 2014

Date to Mayor  MAY 2 9 2014