<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS, INC., NEW JERSEY CHAPTER; GMP CONTRACTORS; ALPINE PAINTING & SANDBLASTING; ALPER ENTERPRISES, INC.; and RON VASILIK,<br><br>                        Plaintiff,<br>v.<br>CITY OF JERSEY CITY,<br>                        Defendant,<br>HUDSON COUNTY BUILDING AND CONSTRUCTION TRADES COUNCIL,<br>                        Intervenor Defendant. | Case:  2:14-cv-05445-SDW-SCM<br><br>**OPINION**<br><br><br><br>August ~~XX~~3, 2015 |

**WIGENTON**, District Judge.

   Before this Court is a Motion to Dismiss filed by the City of Jersey City ("Jersey City") and the Hudson County Building and Construction Trades Council ("Trades Council") (collectively, "Defendants") for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). This Court also considers the Cross-Motion to Amend the Complaint pursuant to Federal Rule of Civil Procedure 15 filed by Associated Builders and Construction, Inc., New Jersey Chapter ("ABC"), GMP Contractors ("GMP"),

1

Alpine Painting and Sandblasters ("Alpine"), Alper Enterprises, Inc. ("Alper"), and Ron Vasilik ("Vasilik") (collectively, "Plaintiffs").

Jurisdiction is proper pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 42 U.S.C. § 1983. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated herein, the Motion to Dismiss is **GRANTED** and the Cross-Motion to Amend is **DENIED**.

**BACKGROUND AND PROCEDURAL HISTORY**

ABC is a New Jersey non-profit corporation with its principal place of business in Trenton, New Jersey. (Compl. ¶ 1.) ABC represents the interests of more than one hundred New Jersey nonunion construction-industry employers. (*Id.* ¶¶ 2, 3.) ABC's members employ "more than one thousand New Jersey residents, including residents of Hudson County." (*Id.* ¶ 3.)

Corporate plaintiffs GMP, Alpine, and Alper ("Plaintiffs") are members of ABC. (*Id.* ¶¶ 4-6.) GMP is a New Jersey business that has its principal place of business in South Plainfield, New Jersey. (*Id.* ¶ 4.) Alper is a New Jersey business with its principal place of business in Moorestown, New Jersey. (*Id.* ¶ 6.) Alpine is a New Jersey business with its principal place of business in Paterson, New Jersey. (*Id.* ¶ 5.) Plaintiff Vasilik ("Plaintiff"), a resident of Morris County, is an employee of Alpine. (*Id.* ¶ 7.)

Jersey City is a municipal corporation with its principal place of business in Jersey City, New Jersey. (*Id.* ¶ 8.) The Trades Council represents the following fifteen (15) building trade unions: Ironworkers, Electrical Workers, Sheet Metal Workers, Laborers, Bricklayers, Plasters and Cement Masons, Roofers, Carpenters, Pipe trades, Operating Engineers, Teamsters, Insulators, Boilermakers, Elevator Constructors, and Painters. (Dkt. No. 6, Kelleher Cert., ¶ 2.) These 15

trades include approximately one-thousand (1,000) Hudson County members and four-hundred (400) to five-hundred (500) City of Jersey City members.  (*Id.*)  Some of these residents are considered apprentice construction workers.  (*Id.*)

On May 28, 2007, Jersey City adopted City Ordinance 14.052 (the "Ordinance")[1], which granted a five-year tax abatement for contractors engaged in building projects with total costs in excess of $25 million.  (Compl. ¶ 9, Ex. A.)  Jersey City provided the tax abatement to allegedly facilitate its redevelopment, to help revitalize its economy, and to provide jobs and other benefits for its residents.  (Dkt. No. 15, Heineman Aff., Ex. B.)  According to Plaintiffs, other than providing the tax abatement, Jersey City does not provide funds, land, or direct management.  (Pls.' Opp. 17.)  The Ordinance has been applied to at least fifteen (15) private construction projects with aggregate costs greater than $500 million and "thousands of [aggregate construction] hours" worked.  (Compl. ¶ 14.)

The Ordinance requires all contractors to enter into a "Project Labor Agreement" ("PLA"), which is defined as "a contract between a labor organization and a developer" that contains various requirements.  (*Id.* ¶ 10.)  The Ordinance mandates several provisions that must be included in any negotiated PLA before a project is approved for tax abatement.  To ensure labor stability during the life of each tax-abated project, the PLAs must contain the following provisions: 1) guaranteeing the absence of "strikes, lockouts, or other similar actions"; 2) establishing procedures to resolve labor disputes that arise before the project's completion; and 3) binding all contractors and subcontractors on the project to the PLA.  (Dkt. No. 1, Ex. A, § 304-35.)  To provide training for Jersey City construction apprentices, the PLAs also require a federally registered apprenticeship program through which Jersey City apprentices would perform "twenty percent [] of the labor

---

[1] The Ordinance amends Jersey City Code, Chapter 304, Article VII.  (Compl., Ex. A.)

3

hours required" for the project unless there are not enough Jersey City apprentices available ("Apprenticeship Requirement"). (*Id.*)

In the event that a developer who was approved for a tax-abated project fails to comply with the Ordinance's PLA requirements, Jersey City reserves the following remedies: 1) "suspension of the tax abatement"; 2) "assessment of 300% of conventional real estate taxes on the project"; 3) "assess[ment of] 'liquidated damages'[2] up to and including termination of the tax abatement"; and 4) financial penalties "on developers whose projects did not initially require imposition of a PLA because Total Construction Costs were projected to be less than the twenty-five million dollar threshold, but where it is later shown that Total Construction Costs in fact exceeded the twenty-five million dollar threshold." (Compl. ¶¶ 11-12.)

PLAs for past projects show that any developer—whether or not it has entered into a pre-existing collective bargaining agreement with its workers—may obtain a tax abatement if it negotiates a PLA meeting the above requirements with a labor organization. (*See* Dkt. No. 15, Ex. F, Ex. L.)  These past PLAs have exclusively pertained to the project for which the developer has sought tax abatement. (*See id.*, Ex. F, ¶ 3; L, 3.)  In other words, developers were free to craft their own employment policies for all projects unrelated to those that received a tax abatement.

Plaintiffs allege that the PLA requirement adversely affects their ability to bid on tax-abated projects "on an equal basis" with unionized contractors for the following reasons: (1) Plaintiffs do not have established bargaining relationships or past experience working with PLAs; (2) Plaintiffs cannot estimate their labor costs without *a priori* knowledge of the PLA negotiation

---

[2] The liquidated damages include, *inter alia*, a $1,000 per day charge for late-filed reports and a charge of up to two-percent of the estimated annual payments for any of the following: late-filed reports, failure to allow work place access, failure to file a report, or a material breach of any term of the Ordinance. (Dkt. No. 1, Ex. B, § 304-37(2)(B).)

outcomes;  (3) Plaintiffs would be required to hire employees through a union hiring hall and "not by their own standards;" and (4) Plaintiffs would be restricted to hiring subcontractors who adhere to a PLA.  (Compl. ¶ 16.)  As a result, Plaintiffs allege that they have been "deterred" from bidding on projects subject to the Ordinance "because of the PLA" requirement. (*Id.* ¶¶ 17-20.)

On August 29, 2014, Plaintiffs filed their Complaint in this Court.  (Dkt. No. 1.)  Plaintiffs allege five counts.  In Count I, Plaintiffs allege that the Ordinance is preempted by §7 or § 8 the National Labor Relations Act ("NLRA"),  29 U.S.C. §§ 151 *et seq*.  (*Id.* ¶¶ 29-33.)  In Count II, Plaintiffs allege that the Apprenticeship Requirement violates the Privileges and Immunities and/or the Commerce Clauses of the U.S. Constitution.  (*Id.* ¶¶ 34-36; U.S. CONST. art. IV, § 2, cl. 1; U.S. CONST. art. I, § 8, cl. 3. )  In Count III, Plaintiffs allege that the Apprenticeship Requirement is preempted by the Employment Retirement Security Act ("ERISA"), 29 U.S.C. §§ 1002(1), 1144. (*Id.* ¶¶ 37-39.)  In Count IV, Plaintiffs allege violations of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, and of the New Jersey Constitution's substantive due process, equal protection, and privileges and immunities protections. (*Id.* ¶¶ 40-42.)  In Count V, Plaintiffs allege a violation of 42 U.S.C. § 1983 ("Section 1983").

On September 23, 2014, the Trades Council filed a Motion to Intervene, which this Court granted on October 16, 2014.  (Dkt. No. 6, 12.)

On October 9, 2014, Jersey City filed its Answer.  (Dkt. No. 10.)  On January 29, 2015, the Trades Council filed the pending Motion to Dismiss pursuant to Rule 12(b)(6).  (Dkt. No. 15.)  On January 30, 2015, Jersey City joined the Trades Council's Motion to Dismiss.  (Dkt. No. 16.)

On March 19, 2015, Plaintiffs filed their opposition to the Motion to Dismiss.  (Dkt. No. 22.)  That same day, Plaintiffs filed a separate Cross Motion to Amend the Complaint.  (Dkt. No.

23.) On April 16, 2015, Defendants filed a reply to both the Motion to Dismiss and the Cross-Motion to Amend. (Dkt. No. 29, 30.)

**LEGAL STANDARD**

As an initial matter, Jersey City joins in the Trades Council's instant Motion to Dismiss pursuant to Rule 12(b)(6), which comes after Jersey City filed its Answer. Consequently, this Court will treat Jersey City's application as a Motion for Judgment on the Pleadings pursuant to Rule 12(c), which is held to the same legal standard afforded to the Trades Council's Rule 12(b)(6) motion. *Rivera v. City of Camden Bd. of Educ.*, 634 F. Supp. 2d 486, 488 (D.N.J. 2009) (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under FED. R. CIV. P. 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining

whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

**DISCUSSION**

*a. NLRA Preemption*

In Count I, Plaintiff alleges that the Ordinance's PLA requirement is preempted by § 7 or § 8 the NLRA. (Compl. ¶¶ 29-33.)

Absent an explicit statutory preemption clause, courts are reluctant to infer preemption unless the state or local action "conflicts with federal law or would frustrate the federal scheme, or unless [it can be] discern[ed] from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." *Bldg. & Const. Trades Council of Metro. Dist. v. Associated Builders & Contractors of Massachusetts/Rhode Island, Inc.*, 507 U.S. 218, 224 (1993) ("*Boston Harbor*") (internal quotation marks omitted) (citation omitted). Courts examining the NLRA have found two ways in which preemption may occur. First, preemption applies where there is state and local regulation of activities that are "protected by § 7 of the [NLRA], or where the regulation constitutes an unfair labor practice under § 8." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244 (1959) ("*Garmon*"). Second, preemption applies where there is state and local regulation of activities that are meant "to be controlled by the free play of economic forces." *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140 (1976)

7

("*Machinists*") (internal quotation marks omitted); *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 614 (1986) (internal quotation marks omitted) (citation omitted).

Preemption, however, applies only to labor *regulation*. *Machinists*, 427 U.S., at 144. In the labor-management zone that the NLRA occupies, a state or municipality may act as a market participant with respect to matters in which it has a proprietary interest. *Boston Harbor*, 507 U.S. at 229-30. Where a market participant acts in accordance with a proprietary interest, its actions are not "tantamount to regulation or policymaking." *Id.* (internal quotation marks omitted). The test for whether a state or local entity acts as a market participant turns on the circumstances of its act. When a state or local entity "acts just like a private contractor would act, and conditions its purchasing upon the very sort of labor agreement that Congress explicitly authorized and expected frequently to find, it does not 'regulate' the workings of the market forces that Congress expected to find; it exemplifies them." *Id.* at 233 (citation omitted).

The Third Circuit has distilled this market participant exemption to federal preemption into a two-step inquiry. *Hotel Employees & Restaurant Employees Union v. Sage Hospitality Resources, LLC*, 390 F.3d 206, 215-16 (3d Cir. 2004) ("*Sage*"). First, the challenged funding condition must "serve[] to advance or preserve the state's proprietary interest in a project or transaction as an investor, owner, or financier." *Id.* (internal quotation marks omitted) (citation omitted). Second, the scope of the funding condition must be "specifically tailored to the proprietary interest." *Id.*

Here, Plaintiffs challenge the PLA requirement attached to the tax-abated construction projects. Although Jersey City allegedly may not directly provide funds, land, or management of the projects, Jersey City's role is not incongruous with its proprietary role as an investor or financier in the projects. (*See* Compl. ¶ 9; Pls.' Opp. 17.) Jersey City foregoes significant tax

revenues for five years in exchange for each project's timely completion.  (Compl. ¶ 9.)  Stated differently, the tax abatement functions as a subsidy that finances or invests in each project.  *See Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 544 (1983) (finding that tax benefits "are a form of subsidy . . . administered through the tax system" in that they have "much the same effect as a cash grant to the organization of the amount of tax it would [otherwise] have to pay").  Each PLA supports the tax-abated project to which it attaches by reducing the risk of work stoppages through the duration of construction.  (Compl., Ex. A, § 304-35.)  Accordingly, the PLA requirement serves to advance Jersey City's proprietary interest in its tax-abated projects as an investor or financier.

Further, Jersey City has not made every construction project—tax-abated or otherwise—contingent on the PLA requirement.  Instead, the PLA requirement specifically attaches to each tax-abated project.[3]  Thus, it is specifically tailored to Jersey City's proprietary interest in the tax-abated projects.  *Compare, e.g.*, *Michigan Bldg. and Const. Trades Council, AFL-CIO v. Snyder*, 729 F.3d 572 (6th Cir. 2013) (upholding Michigan statute conditioning the award of a grant, tax abatement, or tax credit for a *specific* construction project on a PLA requirement), *and Sage,* 390 F.3d at 215-16 (upholding statute conditioning the grant of a *specific* contract on no-strike agreements as being specifically tailored to the states' proprietary interest in its property)*, with, e.g.*, *Gould, Wisconsin Department of Industry, Labor & Human Relations v. Gould Inc.*, 475 U.S. 282 (1986) (holding that the NLRA pre-empted Wisconsin statute addressing employer conduct *unrelated* to the employer's performance of contractual obligations to Wisconsin).

---

[3] This Court notes that the "remedies" that Plaintiffs contend should be construed as "penalties" sound in contract rather than in regulation. (Compl. ¶ 12; Dkt. No. 1, Ex. B, § 304-37(2)(B).)

This Court finds that because Jersey City's PLA requirement rests on its proprietary interest in the tax-abated projects, this is not tantamount to regulation or policymaking. Instead, Jersey City is acting as a market participant. Thus, Count I of Plaintiffs' Complaint is dismissed.

***b. ERISA Preemption***

In Count III, Plaintiffs allege that the PLA's Apprenticeship Requirement is preempted by ERISA, which pertains to "employee welfare benefit plan[s]" that include "apprenticeship or other training programs." (Compl. ¶¶ 37-39); *see also* 29 U.S.C. § 1002(1). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

ERISA preemption claims are subject to the same market participant exemption present in the NLRA preemption analysis. *Lott Constructors, Inc. v. Camden Cnty. Bd. of Chosen Freeholders*, 1994 WL 263851, at *13 (D.N.J. Jan. 31, 1994) ("*Lott*"). In *Lott*, the court found that *Boston Harbor*'s analysis provides meaningful "guidance" in the ERISA context. *Id.* Other courts agree that ERISA preemption is accorded *Boston Harbor*'s market participant exemption. *See Johnson v. Ranchio Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1016 (9th Cir. 2010) (rejecting ERISA preemption claim due to market participation exemption); *Minnesota Chapter of Associated Builders and Contractors, Inc. v. County of St. Louis*, 825 F. Supp. 238, 243 (D. Minn. 1993) (finding that ERISA preemption claim does not apply where the state acts as a private party).[4]

---

[4] Plaintiffs cite *Merit Const. Alliance v. City of Quincy*, 759 F.3d 122 (1st Cir. 2014) ("*Merit*"), to support their ERISA preemption claim. (Compl. ¶ 39.) In that case, a city ordinance required that bidders for public contracts have an apprenticeship program conforming to a Massachusetts state law. *Id.* at 125. That case is distinguishable because the City never raised a market participant argument in the lower court and was properly barred from doing so for the first time on appeal.

Because this Court has found that the PLA containing the Apprenticeship Requirement is protected from NLRA preemption due to the market participant exemption, it follows that ERISA does not pre-empt the Apprenticeship Requirement for the same reason. Therefore, this Court will dismiss Count III of Plaintiffs' Complaint.

*c. U.S. Constitutional Claims*

In Count II, Plaintiffs allege that the PLA violates the Privileges and Immunities Clause of the U.S. Constitution, which provides that "[t]he Citizens of each state shall be entitled to all Privileges and Immunities of Citizens in the Several States." U.S. CONST. art. IV, § 2, cl. 1. Plaintiffs argue that the PLA's Apprenticeship Requirement "unlawfully discriminates against out-of-state individuals and those who employ out-of-state individuals." (Compl. ¶ 35); *see also United Bldg. & Constr. Trades Council of Camden County v. Mayor & Council of City of Camden*, 465 U.S. 208 (1984). Pointing out that no interstate Plaintiffs were implicated in the Complaint, Defendants argued that Plaintiffs did not have standing to pursue their Privileges and Immunities claim. (Dkt. No. 15, 26.) To cure this defect, Plaintiffs cross-moved to amend the Complaint to add David Ofsharick ("Ofsharick"), an out-of-state construction worker, as a plaintiff.

The Cross-Motion, however, does not allege that Ofsharick is an apprentice or the owner of a business that could obtain a tax abatement. (*See generally* Dkt. No. 23.) Because the Ordinance does not prevent Ofsharick from otherwise being employed on a tax-abated project, it follows that the Ordinance does not apply to him. For example, Ofsharick could be hired as part of the 80% or more of labor hours *not* conditionally allocated to Jersey City apprentices.

---

*Id.* at 131. Here, the market participant exemption has been properly raised for this Court's consideration.

Accordingly, this Court denies the Cross-Motion to Amend due to its futility. *Bootay v. KBR, Inc.*, 437 Fed. Appx. 140, 147 (3d Cir. 2011) (internal quotation marks omitted) ("Among the grounds that could justify a denial of leave to amend [is] . . . futility."). Given that all of the remaining parties in the Complaint are residents of New Jersey, the Privileges and Immunities claim is subject to dismissal.

In Count II, Plaintiffs also allege that the Apprenticeship Requirement violates the dormant Commerce Clause of the U.S. Constitution. (Compl. ¶ 36.) The dormant Commerce Clause precludes localities from "unjustifiably . . . discriminat[ing] against or burden[ing] the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Oregon*, 511 U.S. 93, 98 (1994).

An exception to the Commerce Clause arises when a state or locality acts as a market participant and not as a regulator. *E.g.*, *Reeves, Inc. v. Stake*, 447 U.S. 429, 438-39 (1980) (upholding South Dakota's statutory preference for in-state cement suppliers because of South Dakota's proprietary interest in its contracts); *White v. Massachusetts Council of Construction Employers, Inc.*, 460 U.S. 204, 204-05, 214 (1983) (rejecting Commerce Clause challenge to Boston requirement that all municipal construction projects employ Boston residents exclusively). Since this Court has already ruled that Jersey City has enacted the Ordinance as a market participant and not as a regulator, the dormant Commerce Clause claim is subject to dismissal. As such, Count II is dismissed in its entirety.

### d. Section 1983 Claims and Remaining New Jersey and U.S. Constitutional Claims

In Count IV, Plaintiffs allege substantive due process, privileges and immunities, and equal protection violations of New Jersey's Civil Rights Act and Constitution and of similar violations with respect to the U.S. Constitution and "federal and state laws." (Compl. ¶¶ 40-42.) Count V

incorporates and clarifies Count IV by alleging a specific violation of Section 1983.  A claim under Section 1983 requires that a plaintiff allege (1) that an individual deprived him of federal right, and (2) that the individual who deprived him of that right acted under color of state or territorial law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Because the New Jersey Civil Rights Act parallels the language in Section 1983, the same requirements adhere to Plaintiffs' state law claims.  *Hottenstein v. City of Seal Isle City*, 793 F. Supp. 2d 688, 694 (D.N.J. 2011).

The gravamen of Plaintiffs' Section 1983, state, and remaining constitutional claims rests on the Ordinance's alleged deprivation of Plaintiffs' rights "(i) to not be forced or required to enter into an agreement with a labor organization, (ii) to recognize and bargain with a labor organization as the representatives of its employees, or to refrain from doing so, and (iii) to be free from threats, coercion or restraint in the exercise of rights conferred by the NLRA."  (Compl. ¶ 46.)

This Court finds that there is no deprivation of a right.[5]  Plaintiffs may still successfully bid for a tax-abated project, pursue non-union construction on projects that are not tax-abated, and create their own general labor policies outside of tax-abated projects. The Ordinance merely requires conditions to the award of a tax-abated development contract that Jersey City—as a market participant—is entitled to impose. Accordingly, Plaintiffs' Count IV and V claims are dismissed.

**CONCLUSION**

---

[5] Further, this Court notes that it is unclear the extent to which a cognizable right is even implicated. *See Hudson Cnty. Bldg. & Const. Trades Council*, AFL-CIO v. City of Jersey City, 960 F. Supp. 823, 831-32 (D.N.J. 1996) (finding that "in the equal protection clause context, the Supreme Court has never recognized a fundamental right to pursue a particular line of employment."); *Greenberg v. Kimmelman*, 99 N.J. 552, 570-71 (1985) (citations omitted) (finding that the right to employment opportunity is "subject to reasonable measures to promote the general welfare under both the federal constitution . . . and the New Jersey Constitution").

For the reasons set forth above, the Motion to Dismiss is **GRANTED** and the Cross-Motion to Amend is **DENIED**. An appropriate order follows.

s/ Susan D. Wigenton, U.S.D.J.

Orig:      Clerk
cc:        Steven C. Mannion, U.S.M.J.
           Parties